## Keifer Appeal.

Argued March 19, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William J. Joyce,* with him *Martin E. Cusick,* and *Cusick, Madden, Joyce & McKay,* for appellants.

*George R. Bristol,* Assistant Attorney General, with him *John R. Rezzolla,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 1, 1968:

This is an eminent domain proceeding.

Appellants own a parcel of land located in Mercer County on the south side of East State Street, which has been part of the state highway system since 1911. In 1964, E. State Street was widened from 33 feet, 16.5 feet of which was south of the center line, to 70 feet, 35 feet of which is south of the center line. The board of viewers, appointed by the Court of Common Pleas of Mercer County on appellants' petition, determined that the appellants are not entitled to damages because the 18.5 additional feet south of the center line had been dedicated to the public for highway purposes. On appeal, the Court of Common Pleas of Mercer County agreed with the board of viewers that there had been a dedication which barred appellants from collecting direct damages and dismissed the appeal, but referred the case back to the board of viewers to assess consequential damages, if any. This appeal followed.

The dedication relied upon to deny appellants direct damages arises from the recording of two plans for "Hermitage Acres," which includes appellants' land. These plans show E. State Street as having a right of way 100 feet wide, 50 feet of which is south of the center line. The original plan was recorded in Mercer County on April 4, 1923, and a revised plan was recorded on December 31, 1929. Inasmuch as more than 21 years elapsed between the time when the plans were recorded and the time when the highway was widened and the land offered for dedication was first used by the public, the appellants contend that acceptance of the offers to dedicate[1] is barred by the Act of May 9,

---

[1] An offer to dedicate land for a public highway must be accepted for the purpose offered in order to constitute a complete dedication, *Tri City Broadcasting Co. v. Howell*, 429 Pa. 424, 240 A. 2d 556 (1968).

1889, P. L. 173 §1, 36 P.S. §1961. The complete text of that act and its title, which may be considered in resolving any ambiguity, Act of May 28, 1937, P. L. 1019, §54, 46 P.S. §554, is as follows: "An Act relating to unused streets, lanes and alleys. Section 1. Be it enacted, &c., That any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out."

The court below held that this statute does not apply to land dedicated for the widening of an existing state highway, relying on *State Road*, 236 Pa. 141, 84 A. 686 (1912), in which this Court, speaking through Mr. Justice MOSCHZISKER (later Mr. Chief Justice MOSCHZISKER), said: "The statute does not in terms include property given to widen an old street in existence at the time of the dedication of the land, as in this case, nor is there any intimation therein of a purpose to do so." Id. at 145, 84 A. at 687. The lower court considered this dictum and doubted its correctness, but concluded that it controlled the case and should be followed. Passing the question of whether the statement from *State Road*, supra, is dictum or an alternative holding, we believe that it interprets the statute correctly and that the statute does not apply in this case for two reasons.

First, the statute provides that any "street, lane or alley" offered to the public which is "unused" or "not opened to, or used by, the public" within twenty-one years of the offer, cannot thereafter be accepted. Assuming that a state highway is a "street, lane or alley,"

a strip of land offered to widen a street, land or alley is not separately a street, lane or alley; it is simply a supplemental strip of land. Since the offer of a strip of land to widen a street, lane or alley is not the offer of a street, lane or alley, it is not an offer to which the statute applies.[2]

Secondly, as the lower court noted, the Act of May 9, 1889, supra, is a statute of limitations. *Rahn v. Hess*, 378 Pa. 264, 106 A. 2d 461 (1954); *Whittaker Appeal*, 386 Pa. 403, 126 A. 2d 715 (1956). It is an established principle of statutory construction that an act does not deprive the Commonwealth of any prerogative, right or property, as would a statute of limitations, unless the Commonwealth is specifically named therein or unless an intention to include the Commonwealth is necessarily implied. *Interstate Cemetery Co.*

---

[2] Although an existing street clearly is not "unused," but, on the contrary, is "opened to, or used by, the public," it would be improper to reason that the Act of May 9, 1889, supra, does not apply to the offer of a strip of land to widen an existing street because the street, together with the supplemental strip, is used from the moment of the offer and within the 21 year period. The Act of May 9, 1889, supra, appears to us to provide that acceptance of an offer to dedicate a street is ineffective if it does not occur within 21 years of the offer. The same public use of an existing street which preceded the offer of a strip to widen that street is not an unequivocal act manifesting an acceptance of the supplemental strip. See *Milford Borough v. Burnett*, 288 Pa. 434, 438, 136 A. 669, 671 (1927). The question of *whether* there has been an acceptance, which is the relevant inquiry under the Act of May 9, 1889, supra, should be distinguished from the question, which arises only after a decision that there has been an acceptance, of *what* has been accepted. Thus after it has been determined that public use of part of the width of a strip dedicated for street purposes constitutes an acceptance, then it also may be determined that it constitutes an acceptance of the entire width of the strip. See, e.g., *Hawkes v. Philadelphia*, 264 Pa. 346, 354-55, 107 A. 747, 750 (1919); *Hileman v. Hollidaysburg Borough*, 47 Pa. Superior Ct. 41, 51-2 (1911).

496

*Appeal*, 422 Pa. 594, 222 A. 2d 906 (1966); *Hoffman v. Pittsburgh*, 365 Pa. 386, 399, 75 A. 2d 649, 654-55 (1950); *Baker v. Kirschnek*, 317 Pa. 225, 231-33, 176 A. 489, 491-92 (1935) (per curiam). When the act is an expression of "public policy," however, the general rule does not apply. *Pittsburgh Public Parking Authority Petition*, 366 Pa. 10, 76 A. 2d 620 (1950). But every statute is an expression of public policy to some extent. If the exception is not to swallow the rule, "public policy" must be limited to the clearest cases. Compare *Mamlin v. Genoe*, 340 Pa. 320, 17 A. 2d 407 (1941).

The Act of May 9, 1889, supra, does not embody a rule so clearly in the public interest that a court is justified in calling it an expression of "public policy" with the effect that the Commonwealth is bound by its operation without being named therein or included by necessary implication. This conclusion is supported by a glance at the consequences of constructions which include or exclude the Commonwealth. To include the Commonwealth obviously will increase the cost, borne by the public, of condemnation. To exclude the Commonwealth will reduce the cost of condemnation to the public and will not work a hardship on the owners of land offered to the public because they are adequately protected apart from the statute. For example, unless an offer to the Commonwealth has been made irrevocable for special reasons, it can be withdrawn before acceptance. And, in circumstances where injustice would otherwise result, an offer cannot be accepted after an unreasonable delay even though it has not been revoked. See *Rung v. Shoneberger*, 2 Watts 23 (1833). See generally, Annot., 66 A.L.R. 321 (1930).

Since the statute is not an expression of "public policy," in the narrow sense, the general rule applies and the Commonwealth is not bound unless specifically named or included by necessary implication. Although

the statutory term "the public" could be read to include the Commonwealth, and although "street, lane or alley" could be read to include a state highway, this broad construction is not a matter of necessary implication. Consequently, the Act of May 9, 1889, supra, does not apply against the Commonwealth.

We, therefore, affirm the lower court's ruling that the appellants are not entitled to collect direct damages. We express no opinion on their right to consequential damages, since the record before us is insufficient to correctly resolve this question.

Order affirmed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I am firmly convinced that the order of the court below is not appealable and thus this appeal should be quashed. Section 523 of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-523 (Supp. 1967), allows an appeal from any "final order." Section 517, 26 P.S. §1-517 (Supp. 1967), defines the term final order: "The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order." In its definition of final order the Code conspicuously omits one of the four alternatives open to the common pleas court, i.e., referring the matter back to the viewers. This omission indicates that an order referring a case back to the viewers is not a final and thus appealable order.

Furthermore, §517 is merely a codification of prior legislation on this subject. The Act of May 16, 1891, P. L. 75, §6, as amended, 53 P.S. §1089 provided: "[T]he court shall have the power to confirm said

report [of the viewers], or to modify, change or otherwise correct the same, . . . or refer the same back to the same or new viewers . . . ." The act of 1891, see 53 P.S. §1091, then declared: "Within thirty days after the confirmation, modification, changing or correcting of any report, any interested party may appeal from the said decree . . . ." Construing these provisions in *Trasoff v. Philadelphia,* 337 Pa. 223, 224, 11 A. 2d 139 (1940), we held: "The Act of May 16, 1891 . . . only provides for an appeal from a decree of the Court of Common Pleas confirming, modifying, changing or correcting a report of a board of view. No appeal is allowed from a decree referring the case back to the board for further proceedings. That the omission was intentional on the part of the legislature is apparent from the fact the same section of the act gives the Court of Common Pleas the power on exceptions not only to confirm, modify, change or correct the report, but also to refer it 'back to the same or new viewers.' Had the legislature intended to allow an appeal from such an order, it would have expressly so provided." I think it evident that the legislation construed in *Trasoff* and the relevant provisions of the Eminent Domain Code are in all material particulars identical. See generally, Snitzer, Pennsylvania Eminent Domain §517-3 (1965). Therefore, an order referring the case back to the viewers should not be appealable—and that is the order which was entered in this litigation.

We have had two opportunities to interpret the language of section 517. In *Hession Condemnation Case,* 430 Pa. 273, 242 A. 2d 432 (1968), we held that an order which confirmed the viewers' action in all respects other than the award of a jury trial on the amount of damages[1] was appealable. Obviously, *Hes-*

---

[1] Section 517 requires that the court, or a jury if such is demanded, determine the amount of damages. The lower court in

*sion* is not controlling for it does not involve an order referring the litigation back to the board of view. However, *Dacar Chemical Products Co. v. Allegheny County Redevelopment Authority,* 425 Pa. 343, 228 A. 2d 778 (1967), does clearly hold that an order referring the matter back to the board is appealable.[2] I am convinced that *Dacar* is both a departure from our previous cases and a distortion of the statutory mandate and would thus overrule that decision.

---

*Hession* thus confirmed the report of the viewers to the extent that it was statutorily permitted to do so.

[2] I well realize that, although I dissented in *Dacar*, I did so on the merits of the issue raised and therefore impliedly joined that part of the majority opinion discussing the appealability of an order referring the matter back to the viewers. A decision once incorrectly made is not, in my view, an insuperable barrier to achieving the correct result.