404 A.2d 692

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION

v.

BETHLEHEM STEEL CORPORATION and Sanders
and Thomas, Inc.

v.

TENSOREX COMPANY, INC., a New York Corporation, Tensorex Company, Inc., a Florida Corporation, No. 1 Contracting Corporation of Delaware, Sanders and Thomas, Inc., Brookhart and Tyo and Tyo and Fleischer, Inc.

Supreme Court of Pennsylvania.

Argued May 21, 1979.

Decided July 16, 1979.

Reargument Denied Aug. 17, 1979.

Roger T. Shoop, Harrisburg, for appellant.

Stuart J. Moskovitz, Harrisburg, for appellee Dept. of Transp. Edward E. Knauss, III, Harrisburg, for appellee Brookhart & Tyo & Tyo & Fleischer. Henry W. Rhoads, Harrisburg, for appellee Tensorex. David E. Lehman, Harrisburg, for appellee Bethlehem Steel.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM.

This appeal is dismissed. Permission to appeal was granted to consider the continued validity of the rule that the statute of limitations does not run against the Commonwealth in light of *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). But that issue should not be decided in this case because the Commonwealth Court's refusal to allow an amendment to the answer in order to raise the statute of limitations in new matter does not constitute an abuse of discretion even if we were to hold the statute of limitations applies to the Commonwealth.

The complaint instantly was filed over three years prior to the request to amend. The pleadings had closed over five months before the request, and discovery had been proceeding during that period. Accordingly, the controlling question we sought to review need not now be considered.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I am compelled to dissent from the majority's per curiam dismissal of this appeal involving an important question of constitutional dimensions. The original complaint in this case was filed in the Commonwealth Court by the Commonwealth of Pennsylvania, Department of Transportation, appellee and hereinafter "Commonwealth" on January 30, 1975, against Bethlehem Steel Corporation and Sanders and

Thomas, Inc., appellant. Both defendants filed preliminary objections and Bethlehem Steel Corporation filed complaints against additional defendants, No. 1 Contracting Corporation and Tensorex Company, Inc. Numerous other papers were subsequently filed by all parties but are not germane to this appeal.

The underlying facts which gave rise to the initial complaint are as follows. On March 31, 1967, the Commonwealth and Bethlehem Steel entered into a written agreement whereby Bethlehem Steel was to engage the services of a consulting engineer to furnish design plans and drawings for the improvement of the New Street Bridge. Accordingly, Bethlehem retained appellant. The contract for the construction of the bridge was awarded by the Commonwealth to No. 1 Contracting Corporation. Tensorex Company, Inc., then contracted with Bethlehem Steel to submit detail drawings for use by Bethlehem Steel in fabricating the steel members of the bridge. Work commenced and the bridge was opened for traffic on May 29, 1970. The bridge was closed on June 27, 1970, when it was discovered that one of the steel members had buckled.

The sole issue before this Court at this time is whether the Commonwealth Court abused its discretion in denying appellant's motion for leave to amend its answer with new matter. At the time of appellant's motion, discovery had not been completed and the matter had not yet been scheduled for trial.

Argument on preliminary objections was held on September 15, 1977 and on December 13, 1977, the Commonwealth Court dismissed the objections subsequent to which appellant filed an amended answer with new matter on February 9, 1978. On July 24, 1978, appellant filed a petition for leave to amend this answer in order to raise the statute of limitations as a defense against the Commonwealth. Appellant based its petition, as it does this appeal, on the fact that the case of *Mayle v. Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) (abolishing sovereign immunity) implicitly removed from the Commonwealth its immunity to the running of the statute of limitations. Appellant contended

in its petition to amend, as it does now, that since *Mayle* was decided on July 14, 1978 and appellant filed the petition to amend on July 21, 1978 to raise an affirmative defense implied by *Mayle,* the amendment should have been permitted. The Commonwealth Court denied the petition for leave to amend but found it to be a controlling question of law and that an immediate appeal would advance the termination of the matter. Appellant filed for permission to appeal from an interlocutory order and we granted that petition, hence this appeal.

I note initially that the issue before us is whether appellant should have been permitted to amend its answer by raising a defense and *not* whether the defense has merit. The two issues are not the same. It may be that an amendment should be properly denied when it is obvious that the new defense proposed to be raised is frivolous. When, however, the proposed amendment raises a defense which has arguable merit, the merits of the defense should not be decided before the granting of the motion to amend. When a court makes a determination that a particular defense has no merit *before* it allows the defense to be pleaded, the court is simply giving an advisory opinion on a matter that is not yet in the case.

The Commonwealth Court's order appears to decide the merits of the defense attempted to be brought into the case before permitting the defense into the case. The only proper issue before us is whether appellant should have been permitted to amend its answer by raising a new defense. In my opinion the Commonwealth Court clearly erred in not permitting the amendment.

Appellant does not contend, nor indeed could it, that it has an absolute right to amend its answer. Rule 1033 of the Pennsylvania Rules of Civil Procedure states:

"A party, either by filed consent of the adverse party *or by leave of court, may at any time* change the form of action, correct the name of a party or amend his pleading. *The amended pleading may aver* transactions or *occurrences which have happened* before or *after the filing of the original pleading, even though they give rise to a new*

cause of action or *defense.* An amendment may be made to conform the pleading to the evidence offered or admitted." (Emphasis added.)

While it has long been the law in this state that an amendment is a matter of judicial discretion, it is also well established that such amendments should be liberally permitted. *Posternack v. American Casualty Company,* 421 Pa. 21, 218 A.2d 350 (1966), *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963). In fact, the Rules of Civil Procedure themselves provide that they be liberally construed. See Pa.R.Civ.P. 126.

This Court has previously defined the only reasons for not permitting amendments as where surprise or unfair prejudice would result or where the amendment is against a positive rule of law. *Posternack, supra.* Indeed, it has been said:

"As in all cases, the discretion of the court in acting upon applications for amendments is a judicial discretion as distinguished from mere whim or caprice. Accordingly, in the absence of a proper and compelling ground for refusing an amendment the court must grant leave to amend. Its refusal to do so under such circumstances is an abuse of discretion which is reversible on appeal." *Pellegrine v. Home Insurance Co.,* 200 Pa.Super. 48, 53, 186 A.2d 662, 664 (1962), quoting 2A Anderson Pa.Civ. Pract. 404.

Therefore, it is incumbent upon this Court to examine whether "proper and compelling" reasons existed for the Commonwealth Court to refuse appellant's motion to amend. Neither the fact that appellee is the Commonwealth nor the merits of the issue of the applicability of the statute of limitations to the Commonwealth are to be *considered* by this Court. The very narrow question of whether the amendment should be permitted is the only consideration at this time.

Unfair surprise to the other party would be one reason to deny a motion to amend. However, surprise in this context means not merely that a party is raising something new but

that the nonmoving party will not have time to adequately prepare its arguments to meet this new matter. Therefore, courts have in the past looked to whether the complaint has been brought to trial, although amendments have still been permitted even after trial has commenced. *Pellegrine, supra; Sheppard v. First Pa. Nat'l Banking and Trust Co.,* 199 Pa.Super. 190, 184 A.2d 309 (1962). In the case before us, the matter is not yet ready for trial, the parties still being in the pleading and discovery stages.

The Commonwealth does argue that the amendment should be denied because of the "plethora of pleading with so little progress made towards the ultimate resolution of the merits of the claim." While I am cognizant that "one hundred and twenty-three entries have been made to the docket" this fact alone is not persuasive reason to deny appellant's amendment. Appellant's amendment is not based on a frivolous argument and cannot be called merely a delaying tactic. In its order denying the motion to amend, the Commonwealth Court itself called the question one "to which there is a substantial ground for difference of opinion." Appellant seeks to amend to include a new defense which it feels did not exist prior to our decision in *Mayle.* There is arguable merit to the contention, that *Mayle,* by stripping away sovereign immunity, affected the sovereign's immunity to the running of the statute of limitations.

Furthermore, appellant sought to amend within seven days of the *Mayle* decision. Adding a new defense which arose after the suit started is impliedly permitted under our rules.

"The defendant may, by amendment, bring in transactions and occurrences which have happened either before or after the filing of the original answer, even though they give rise to a new defense. Thus, a defendant should be given leave to amend, in order to add a new defense which was unknown to him at the time his original answer was filed. By analogy, the defendant may now rest his defense upon matters occurring between the time the plaintiff commences the action and the time the original answer is to be filed. These Rules do not specifically permit

this, but, but, if such a defense can be introduced by amending an original complaint, there is no logical reason to refuse the defendant the right to include it initially. An opposite ruling would be absurd, and would simply impose upon the defendant the duty of filing two papers to accomplish the result which Rule 1033 permits.

This will include counterclaims available to the defendant against the plaintiff, which did not arise, or were not acquired by the defendant, until after the plaintiff commenced the action." (Footnotes omitted.) 2 Goodrich-Amram 2d § 1033.8.

The Commonwealth is not unfairly prejudiced by this amendment. "Prejudice" in this context must mean more than mere detriment to another party, since

"[t]o attach as a condition, in allowing an amendment where the right party is in court, that that party must not be prejudiced, is to produce a condition that devours the grace because the defendant is always bound to be prejudiced. That is the whole purpose of the procedure, namely that the defendant be required to answer for an offense charged against him." *Waugh v. Steelton Taxicab Co.,* 371 Pa. 436, 439, 89 A.2d 527, 529 (1952).

The opposing party must be *unfairly* prejudiced, as in cases where an amendment introduces a new cause of action after the statute of limitations has run on that cause of action. *McCormick Coal Co. v. Schubert,* 379 Pa. 309, 108 A.2d 723 (1954); *Shenandoah Boro. v. Philadelphia,* 367 Pa. 180, 79 A.2d 433 (1951). Similarly in *Kilian v. Allegheny Co. Distributors, Inc.,* 409 Pa. 344, 185 A.2d 517 (1962) we upheld the denial of a motion to amend where the moving party wanted to amend his preliminary objections by including a challenge to jurisdiction over the person, an issue raised by a court decision rendered after the filing of the preliminary objections. In *Kilian,* we found unfair prejudice because if this particular objection to personal jurisdiction had been made earlier, the opposing party could have had an opportunity to either cure the jurisdiction problem or institute actions against other parties. However, in the interim between the original complaint and the proposed amendment

the statute of limitations had run to the detriment of the opposing party. *Kilian* is distinguishable from the case before us today. While appellant's proposed amendment involves a statute of limitations defense, if the statute of limitations applies to the Commonwealth, it would have run *prior* to the time the Commonwealth filed the original complaint. The interim time between the original complaint and the motion to amend are not computed as part of the time for the running of the statute as in *Kilian.* No events have occurred between the filing of the original complaint and this proposed amendment which would result in unfair prejudice.

Indeed, courts have specifically permitted defendants to amend and include a defense of the statute of limitations. "[N]o substantial rights of the plaintiff were affected by the late filing inasmuch as timely notice could not have altered his position. The statute of limitations had run prior to the commencement of the action" *Gagliardi v. Lynn,* 446 Pa. 144, 151, 285 A.2d 109, 112 (1971). So it is in this case, *if* the statute has run against the Commonwealth, it ran before the Commonwealth filed its complaint. Appellant only seeks an opportunity to litigate *if* the statute applies to the Commonwealth.

Finally, the Commonwealth impliedly argues that the proposed amendment is against a positive rule of law, that the statute of limitations does not apply to the sovereign. It is true that this Court announced that policy over thirty-five years ago. *Frey's Estate,* 342 Pa. 351, 21 A.2d 23 (1941). However, much of our case law and policy considerations have since changed. It is at least arguable that *Mayle* does have some impact in this area. Appellant should, therefore, have been permitted to amend its answer.

The majority by its per curiam dismissal of this appeal is allowing a Commonwealth Court advisory opinion to stand which holds that some sovereign immunity still exists in spite of *Mayle,* in that the "king" has special privileges not accorded to his subjects. Neither the Commonwealth Court nor any other court has explored in any opinion the constitutionality of immunizing the Commonwealth from a statute

of limitation's defense since this Court's decision in *Mayle.* The Commonwealth Court's order in this case simply states that *Mayle* did not affect the Commonwealth Court's decision in *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.,* 31 Pa.Cmwlth. 212, 375 A.2d 890 (1977), hereinafter *ARCO.* A reading of the *ARCO* case, however, is of no help whatsoever on the important issue of whether the Commonwealth remains immunized from a statute of limitation's defense. All that *ARCO* did was decide that since the Turnpike Commission was *not* a part of the sovereign, it *was* subject to a statute of limitation's defense. The issue in *ARCO* was entirely different than the issue of whether *Mayle* still permits the immunization of the Commonwealth from a statute of limitation's defense.

I most emphatically dissent from (1) the Commonwealth Court's deciding of a serious constitutional issue when the only issue before it was much simpler—whether to permit an amendment to an answer; (2) the Commonwealth Court's deciding of the constitutional issue without a plausible rationale except the citation of a case which has nothing to do with whether the Commonwealth, after *Mayle,* remains immune to a statute of limitation's defense; (3) this Court's dismissal of this appeal; and (4) this Court's refusal to reverse the Commonwealth Court's order which fails to recognize that *Mayle* meant what it said—the king is dead.