Commonwealth of Pennsylvania, Department of Transportation, Plaintiff *v.* J. W. Bishop & Co., Inc., Defendant.

Commonwealth of Pennsylvania, Department of Transportation, Plaintiff *v.* George H. Overmoyer, Defendant.

378

Argued September 9, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, MACPHAIL and WILLIAMS, JR. Judge BLATT did not participate.

*Paul A. Logan*, Assistant Attorney General, with him *John T. Kalita, Jr.*, Assistant Attorney General, *Ward T. Williams*, Chief Counsel, and *Harvey Bartle, III*, Acting Attorney General, for plaintiff.

*F. Lee Shipman,* with him *Timothy I. Mark, Goldberg, Evans & Katzman,* for defendant, J. W. Bishop & Co., Inc.

*Harvey Freedenberg,* with him *David E. Lehman, McNees, Wallace & Nurick,* for defendant, George H. Overmoyer.

OPINION BY JUDGE CRAIG, December 17, 1980:

The Commonwealth of Pennsylvania, through the Department of Transportation, has brought these two separate actions in trespass against defendants George H. Overmoyer and J. W. Bishop & Company, Inc. to recover damages for the collapse of state bridges, allegedly caused by defendants' overweight vehicles. We have consolidated the cases for consideration because both turn upon the same issue.

The pleadings on their face make clear that the state filed its action against defendant J. W. Bishop & Company, Inc. 6 years and 11 months after the cause of action arose and against defendant Overmoyer 8 years and 4 months after the occurrence.

On the basis of the six-year statute of limitations pertaining generally to property damage actions,[1] one defendant has moved for summary judgment and the other for judgment on the pleadings. The Commonwealth, not disputing that the question is one of law only, claims that it is immune from the bar of the statute of limitations, citing the leading case of *Frey's Estate,* 342 Pa. 351, 21 A.2d 23 (1941), as well as others, including, *e.g., Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 146 A.2d 714 (1958). Our conclusion is that, under Pennsylvania jurisprudence to-

---

[1] Section 1 of the Act of March 27, 1713, 1 Sm.L. 76, *formerly* 12 P.S. §31, repealed by the Act of April 28, 1978, P.L. 202, §2(a), 42 P.S. §20002(a)[9]. The present Judicial Code provision is 42 Pa. C. S. §5527.

day, the Commonwealth is no longer exempted from compliance with statutes of limitations by the doctrine of *nullum tempus occurrit regi.*

Although that judicial doctrine is thus labeled by a maxim which translates "Time does not run against the king",[2] *Commonwealth v. Baldwin,* 1 Watts 54, 54-5 (1832) ruled that, in the land of William Penn, the doctrine has stemmed, not from the dignity of royalty, but from the trusteeship aspect of the kingly prerogative of government. Nevertheless, we perceive that the death of the kingly prerogative of the state was pronounced by the Pennsylvania Supreme Court in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978).

In *Mayle,* our Supreme Court discarded the judicial doctrine of sovereign immunity because it irrationally made justice depend upon the status of one party, and because, without it, the state can be expected to be more efficient. We cannot deny the relevance of these same considerations to the abolition of *nullum tempus.*[3]

The function of a statute of limitations, in barring stale claims after ample time has been afforded to pursue them, is a function which promotes justice. *Insurance Company of North America v. Carnahan,*

---

[2] Black's Law Dictionary 963 (5th ed. 1979).

[3] Although the late Justice MANDERINO, dissenting in *Department of Transportation v. Bethlehem Steel Corp.,* 486 Pa. 186, 194, 404 A.2d 692, 697 (1979), objected to the *Bethlehem Steel* majority's refusal to re-examine *nullum tempus* in that case, the Supreme Court, in declining to decide the question at that point, was not necessarily negating the view there asserted by Justice MANDERINO, that "Mayle meant what it said—the king is dead."

In *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.,* 482 Pa. 615, 620 n. 2, 394 A.2d 491, 494 n. 2 (1978), holding the Turnpike Commission subject to the statute of limitations because it does not share the Commonwealth's sovereignty, the Supreme Court likewise understandably stated that there was no need there to decide whether *Frey's Estate, supra,* survives after *Mayle, supra.*

446 Pa. 48, 284 A.2d 728 (1971). The foundation of a statute of limitations is the duty of litigants to pursue litigation with reasonable diligence so that the system is not impaired in its operation. In *Schmucker v. Naugle,* 426 Pa. 203, 205-6, 231 A.2d 121, 123 (1967) the Pennsylvania Supreme Court stated:

> Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary.

Thus, given that our system of justice is enhanced by barring lax plaintiffs from pursuing personal injury claims after two years and property damage or contract claims after six years, the fact that the laxity is on the part of the Commonwealth's agents does not affect the applicability of the principle.[4]

By the same token, delay in litigation can produce an unjust imposition as much when the plaintiff is the state as when it is a private party.

> The person against whom the right is to be enforced might be greatly prejudiced by plaintiff's delay. Witnesses disappear or remove to distant parts and the entire aspect of the par-

---

[4] To say that the citizens of the Commonwealth should not suffer loss because their servants fail to pursue claims within the prescribed time is not persuasive; we subject fiduciaries and all manner of other agents to the statute of limitations, even though their neglect imposes loss upon their beneficiaries and principals, who must then find their recourse against the neglectful ones. *Trustees of Properties of Kingston v. Lehigh Valley Coal Co.,* 241 Pa. 469, 88 A. 763 (1913).

ties on both sides may change with the lapse of time.

*Ulakovic v. Metropolitan Life Insurance Co.*, 339 Pa. 571, 575, 16 A.2d 41, 42-3 (1940).

Because such concerns exist independently of the status of the plaintiff, a distinction based on the Commonwealth's status is invidious.

The rule that laches can bar the Commonwealth, *Stahl v. First Pennsylvania Banking & Trust Co.*, 411 Pa. 121, 191 A.2d 386 (1963), rather than providing a reason for preserving *nullum tempus,* actually provides support for the view that the state, like other litigants, should also be subject to the statutory expression of the same policy which laches embodies.

On the point of spurring efficiency, perpetuation of *nullum tempus* simply condones official sloth. It is not persuasive to argue that the Commonwealth's officers are so "occupied by the cares of government"[5] that they cannot attend to the cares of government, *i.e.,* take the steps necessary to institute suit within a period of years after a cause of action has arisen.

There is no fundamental distinction between viewing the state as defendant under the sovereign immunity doctrine and perceiving the state as plaintiff under *nullum tempus.* That duality constitutes just two sides of the same coin, the issue of whether or not the state as litigant shall have a status immune to the considerations which govern judicial policies as to litigation.

This court has heretofore recognized the interrelationship between sovereign immunity and *nullum tempus.* In *General State Authority v. Kline,* 29 Pa. Commonwealth Ct. 232, 370 A.2d 402 (1977) we held that the General State Authority should have the benefit of *nullum tempus* precisely because it was shielded on the other side by sovereign immunity, stating:

---

[5] *Gibson v. Chouteau,* 80 U.S. (13 Wallace) 92, 99 (1871).

It is a general rule that the Commonwealth as a sovereign is not subject to the statute of limitations. Moreover, we have previously held on several occasions that the GSA is an authority of the Commonwealth and as such is entitled to the shield of sovereign immunity. We believe, therefore, that the statute of limitations does not apply to actions brought by the GSA and that the complaint was not untimely. (Citations omitted.)

*Id.* at 235, 370 A.2d at 403-4.

In *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.,* 31 Pa. Commonwealth Ct. 212, 375 A.2d 890 (1977), *aff'd* 482 Pa. 615, 394 A.2d 491 (1978) we linked the two concepts even more closely, stating:

However, when our Supreme Court held in Specter, supra, that the Commission was distinct as an entity separate and apart from the Commonwealth to such an extent that it could not *'share the attributes of sovereignty which inhere in the state'*, 462 Pa. at 493, 341 A.2d at 491 (emphasis added), we believe it implicitly also removed from the Commission that attribute of sovereignty which shielded it from the running of time. The rationale and policy underlying Specter, supra, are equally applicable here—particularly as the concept of *nullum tempus occurrit regi* is not of constitutional dimensions as is sovereign immunity.

*Id.* at 216, 375 A.2d at 892.

Thus we noted the intertwined relationship of the two doctrines and the sole distinction—that *nullum tempus* lacks the constitutional source from which sovereign immunity springs in Pennsylvania. Not mentioned in our constitution or expressed in statute, *nullum tempus* instead was "adopted in our jurisprudence." *Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205,

218, 146 A.2d 714, 720 (1958); *Frey's Estate, supra,* at 353, 21 A.2d at 24.

The non-legislative origin weakens the argument for *nullum tempus* based on the legislature's failure expressly to name the Commonwealth as subject to the statute of limitations. The judicial parentage of the doctrine suggests that the courts need not await legislative action.

Our earlier decision on preliminary objections in one of these cases, *Commonwealth v. J. W. Bishop & Co.,* 29 Pa. Commonwealth Ct. 285, 370 A.2d 747 (1977), antedated *Mayle, supra,* decided July 14, 1978, and would therefore seem to be no longer the law of the case. We note that *Mayle* has been explicitly held to be applicable retrospectively, *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980).

Accordingly, we will grant the motions of both defendants and enter judgment for defendant in each case.

ORDER IN 817 C.D. 1976

Now, December 17, 1980, defendant's motion for judgment on the pleadings is granted and judgment in favor of defendant is hereby entered.

ORDER IN 1757 C.D. 1977

Now, December 17, 1980, defendant's motion for summary judgment is granted and judgment in favor of defendant is hereby entered.

———

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

The Department of Transportation (PennDOT) has instituted trespass actions against George H. Overmoyer and J. W. Bishop & Company, Inc. (defendants), seeking recovery of damages to bridges, allegedly caused when defendants' overweight vehicles

crossed the bridges, causing them to collapse. Presently before this Court are defendants' motion for summary judgment and motion for judgment on the pleadings. Both motions contend that PennDOT's claims are barred by the applicable statute of limitations.

The relevant statute of limitations for trespass actions is six years. Section 1 of the Act of March 27, 1713, 1 Sm.L. 76, *formerly* 12 P.S. §31.[1] PennDOT does not dispute that it did not file its actions within the six-year period[2] but argues that it is not subject to the statute of limitations provision. I would agree.

The doctrine of *nullum tempus occurrit regi (nullum tempus)*[3] has long exempted the Commonwealth from technical compliance with a statute of limitations. *United States v. Summerlin,* 310 U.S. 414 (1940); *United States v. Nashville, Chattanooga & St. Louis Railway,* 118 U.S. 120 (1886); *Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 146 A.2d 714 (1958); *Frey's Estate,* 342 Pa. 351, 21 A.2d 23 (1941); *General State Authority v. George M. Ewing Co.,* 29 Pa. Commonwealth Ct. 523, 371 A.2d 1044 (1977); *General State Authority v. Kline,* 29 Pa. Commonwealth Ct. 232, 370 A.2d 402 (1977); *Torch v. Constantino,* 227 Pa. Superior Ct. 427, 323 A.2d 278 (1974). The doctrine " 'has been adopted in our jurisprudence as a matter of important public policy.' " *Commonwealth v. Musser Forests, Inc., supra,* 394 Pa. at 218, 146 A.2d at 720 (quoting *Frey's Estate, supra,* 342 Pa. at 353,

[1] Repealed by Section 2(a) of the Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a)[9]. A similar provision is now found in the Judicial Code, 42 Pa. C. S. §5527.

[2] PennDOT brought its action against J. W. Bishop & Co., Inc., 6 years, 11 months after the incident giving rise to the cause of action, and against Overmoyer 8 years, 4 months after the incident giving rise to the cause of action.

[3] Literally, "Time does not run against the king." Black's Law Dictionary 1217 (rev. 4th ed. 1968).

21 A.2d at 24). The policy reasons have been summarized as follows:

(1) The rule is founded on the principle of public policy, that the property and rights vested in the government for the benefit of the whole community should not be dependent on the negligence or bad faith of the agents or officers to whom the conduct of public business must necessarily be intrusted.

(2) The sovereign's time and attention are occupied by the cares of government and it must not be held negligent in its delay.

(3) It is presumed that the state will not bring unjust or oppressive actions purposely delayed.

53 C.J.S. *Limitations of Actions* §15 n. 48 (1948) (citations omitted). *See also Guaranty Trust Co. of New York v. United States,* 304 U.S. 126 (1938).

Defendants admit the foregoing but ask us to reexamine the *nullum tempus* doctrine in light of our Supreme Court's recent decision of *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). In *Mayle,* the Court abrogated sovereign immunity on the grounds that, (1) under the sovereign immunity doctrine, plaintiff's opportunity for justice depends, irrationally, upon the identity or status of the wrongdoer and (2) abolition of the sovereign immunity doctrine may make the government more efficient and diligent in the administration of its affairs. Applying this reasoning to the instant case, defendants here argue that the *nullum tempus* doctrine should be abolished since (1) the *nullum tempus* doctrine establishes an irrational status-based immunity in favor of the Commonwealth and (2) the *nullum tempus* doctrine defeats the purpose of a statute of limitations, which is designed to force a litigant to pursue his rights diligently.

The purpose and effect of the status-based immunity for the sovereign, as well as the other status-based immunities which were rejected by our Supreme Court[4] are markedly dissimilar from those embodied in the *nullum tempus* doctrine. Sovereign immunity protects the alleged wrongdoer, the state, in all actions by private plaintiffs. Under sovereign immunity, the state, *as defendant,* automatically proscribes a plaintiff from seeking remedy for a wrong done to him by the state. In contrast, the *nullum tempus* doctrine is utilized by the state, *as plaintiff,* to seek indemnification for damages inflicted upon the state by a private wrongdoer. Abolition of the *nullum tempus* doctrine would, in the instant case, operate to shield the private wrongdoer from the consequences of his wrongs, a result exactly opposite to that achieved by the abolition of the sovereign immunity doctrine. In this context, then, I believe that the right of the private wrongdoer to be protected by a statute of limitations is outweighed by the right of the public to recover from the wrongdoer.[5]

Even if one were to accept defendants' argument that the policy justifying the sovereign immunity doctrine is the same as that supporting the *nullum tempus* doctrine, nevertheless I would still be constrained to uphold the *nullum tempus* doctrine. *Mayle* is not the latest, and certainly not the final, word on sovereign

---

[4] *See Ayala v. Phila. Bd. of Pub. Educ.,* 453 Pa. 584, 305 A.2d 877 (1973) (abolition of local government immunity) ; *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abolition of parental immunity) ; *Flagiello v. Pa. Hospital,* 417 Pa. 486, 208 A.2d 193 (1965) (abolition of immunity for charities).

[5] The harshness of this doctrine is somewhat tempered in Pennsylvania, since defendants may raise the defense of laches against the Commonwealth if the Commonwealth proceeds in equity. *Stahl v. First Pa. Banking & Trust Co.,* 411 Pa. 121, 191 A.2d 386 (1963) ; *Comm. ex rel. Att'y Gen. v. Bala & Bryn Mawr Turnpike Co.,* 153 Pa. 47, 25 A. 1105 (1893).

immunity. Subsequent to *Mayle*, the legislature, in Section 5110 of the Judicial Code, 42 Pa. C. S. §5110, reestablished sovereign immunity except for eight limited instances. By reaffirming the validity of the sovereign immunity doctrine, the legislature has necessarily placed its imprimatur on the policy underlying that doctrine. Thus, the post-*Mayle* environment is not antithetical to the policies which sustain the sovereign immunity doctrine. Pennsylvania has not yet determined that "the king is dead." *See Department of Transportation v. Bethlehem Steel Corp.*, 486 Pa. 186, 194, 404 A.2d 692, 697 (1979) (MANDERINO, J., dissenting).

I would also note that, in construing a statute of limitations, we must be mindful of the "established principle of statutory construction that an act does not deprive the Commonwealth of any prerogative, right or property, as would a statute of limitations, unless the Commonwealth is specifically named therein or unless an intention to include the Commonwealth is necessarily implied." *Keifer Appeal*, 430 Pa. 491, 495, 243 A.2d 336, 339 (1968). *See also Interstate Cemetery Co. Appeal*, 422 Pa. 594, 222 A.2d 906 (1966). The legislature is presumed to know the prior law on the subject, *Raymond v. Scranton School District*, 186 Pa. Superior Ct. 352, 142 A.2d 749 (1958), and failure to include the Commonwealth within the statute of limitations provisions indicates the legislative intent to exclude the Commonwealth from the operation of those provisions.[6]

---

Here, however, defendants are precluded from raising laches since the Commonwealth has filed a trespass action. *Hoffner v. James D. Morrissey, Inc.*, 36 Pa. Commonwealth Ct. 513, 389 A.2d 702 (1978). *Cf. Gen. State Auth. v. Kline, supra* (laches cannot be raised against the Commonwealth in an assumpsit action).

[6] Defendants' reliance on *Pa. Turnpike Comm'n v. Atlantic Richfield Co. (ARCO)*, 482 Pa. 615, 394 A.2d 491 (1978), is misplaced. In

It is the function of the legislature and not this Court to examine a statute of limitations in the light of experience to determine whether it works an unwarranted hardship upon defendants and, if so, to correct the law accordingly. *Gawlick v. Glen Alden Coal Co.,* 178 Pa. Superior Ct. 149, 113 A.2d 346 (1955). *Cf. Freezer Storage, Inc. v. Armstrong Cork Co.,* 234 Pa. Superior Ct. 441, 450, 341 A.2d 184, 188 (1975), *aff'd,* 476 Pa. 270, 382 A.2d 715 (1978) (" '[i]t has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitations' ").

Therefore, my reexamination of the *nullum tempus* doctrine, in light of *Mayle,* has not convinced me that the doctrine should be abandoned. I believe that the doctrine maintains its vitality in present times and that it stands independent of, and is unaffected by, the changes in the sovereign immunity doctrine. Finally, I believe that the legislature is the proper forum for implementing the action urged by defendants.

*ARCO,* the Court determined that the Turnpike Commission was subject to the statute of limitations. *ARCO* is easily distinguished, however, since the Court also decided that the Commission was not an integral part of the sovereign. *See also Specter v. Commonwealth,* 462 Pa. 474, 493, 341 A.2d 481, 491 (1975) : "It is clear that the [Turnpike] Commission is not an integral part of the Commonwealth, and cannot share the attributes of sovereignty which inhere in the state."

Moreover, the Court in *ARCO* specifically added: "We need not and do not decide whether the holding of Frey's Estate is of continued vitality after Mayle v. Pa. Dept. of Highways, 479 Pa. 384, 388 A.2d 709 (1978)." *ARCO, supra,* 482 Pa. at 620 n. 2, 394 A.2d at 494 n. 2.

---

DISSENTING OPINION BY JUDGE WILKINSON, JR.:

I must respectfully dissent. In my opinion the statute of limitations does not apply to the Commonwealth just as no other statute applies to the Common-

390

wealth unless the legislature expressly provides that it should apply. *Pittsburgh Petition,* 376 Pa. 447, 103 A.2d 721 (1954). *Reading Co.'s Appeal,* 343 Pa. 320, 22 A.2d 906 (1941). The majority would seem to say that all statutes apply to the Commonwealth unless expressly stated otherwise.

This may be a decision of much greater consequence than *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), which I would limit to the abrogation of the doctrine of sovereign immunity.

Judge WILLIAMS, JR. joins.