515 A.2d 10

**Gregory TRICE, Appellant**

**v.**

**Robert B. MOZENTER.**

Superior Court of Pennsylvania.

Argued April 8, 1986.

Filed Sept. 11, 1986.

Andrew J. Jackson, Philadelphia, for appellant.

Ernest Iannelli, Philadelphia, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County granting a motion for judgment on the pleadings against the plaintiff/appellant, Gregory Trice. We affirm.

Under Pa.R.Civ.P. 1034, a motion for judgment on the pleadings may be granted in cases which are so free from

doubt that a trial would clearly be a fruitless exercise. Such a motion is in the nature of a demurrer; all of the opposing party's well-pleaded allegations are viewed as true, but only those facts specifically admitted by him may be considered against him. In making this determination, a court is to consider only the pleadings themselves and any documents properly attached thereto. *Moore v. McComsey,* 313 Pa.Super. 264, 459 A.2d 841 (1983).

So viewed, the record indicates that in October of 1974, the plaintiff secured the services of Attorney Robert B. Mozenter to defend him in a criminal matter to be tried in the United States District Court for the Eastern District of Pennsylvania. The end result was plaintiff's conviction and sentence for fifteen (15) years imprisonment, which he immediately began serving.

The conviction was affirmed without opinion by the Third Circuit Court of Appeals in 1976. Four years later, plaintiff's petition for a writ of habeas corpus, alleging that he had been inadequately assisted by counsel at trial, was found by the same Court to warrant an evidentiary hearing. Following that proceeding, the District Court entered a ruling finding that, albeit trial counsel had been ineffective, the plaintiff had not been prejudiced by counsel's conduct. On appeal, the Third Circuit reversed and remanded for a new trial. It did so on the basis that trial counsel had been ineffective in failing to conduct an investigation designed to reveal whether a voice exemplar (purportedly of the plaintiff) and an intercepted recording (the sole evidence linking the plaintiff to the crimes charged) contained the same voice. It was this nonfeasance which the Third Circuit concluded prejudiced Trice because:

> ... the exemplar evidence, if investigated, *"might* have led to a viable defense and a [favorable] verdict," [*U.S. v.* ] *Baynes,* 622 F.2d [66] at 69 [3d Cir.1980] ... and that the failure of Trice's trial attorney so to proceed is not harmless "beyond a reasonable doubt," *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.

*United States v. Baynes,* 687 F.2d 659, 673 (3rd Cir.1982) (Emphasis in original). *Baynes* was filed on August 11, 1982, and the plaintiff was released from prison on September 17 of the same year. However, it was not until August 9, 1984 that a complaint was filed against the defendant/appellee, Robert B. Mozenter.

The first count of the complaint was in assumpsit and alleged that Mozenter breached his "retainer agreement" by failing, inter alia, to obtain a voice exemplar "pivotal" to the case. Further, the plaintiff claimed to have been unable to "discover" whether Mozenter breached his contract until the August 11, 1982 ruling by the Third Circuit that counsel was ineffective. Prior to that date, it was averred, the plaintiff did not possess the expertise to discover that such a breach had occurred. Lastly, it was contended, Mozenter's breach caused the plaintiff to suffer extreme emotional and physical injury, distress and trauma which he would continue to endure.

The second count sounded in trespass and contended that Mozenter's acts of omission, one of which referred to the failure to secure the voice exemplar, rendered his services less than effective, was the cause of the plaintiff's conviction and deprived him of his freedom for over five and one-half (5½) years. Also, such conduct (negligence and carelessness) impaired the plaintiff's earning capacity and caused him trauma, injury and distress which would continue into the future. In both counts, damages in excess of $20,000.00 were demanded, as well as a separate count for an equal amount in punitive damages for such gross and wanton conduct on the part of Mozenter.

In Mozenter's answer, he denied in material part all of the plaintiff's allegations, albeit he did admit to being retained and hired (for a sum certain) to defend the plaintiff in a criminal suit. In the new matter portion of the reply, Mozenter attributed the conviction to the plaintiff's contravention of the criminal statutes charged and not to any conduct on his part. To the extent that the plaintiff may have been injured by the allegedly tortious conduct or

breach of contractual duty by Mozenter, he (the plaintiff) was aware of the same by March 25, 1975 (sentencing date), February 17, 1977 (initial appeal of sentence affirmed), October 31, 1978 (date affidavit in support of Motion To Vacate Judgment signed by the plaintiff), November 3, 1978 (date Memorandum in support of Motion To Vacate Judgment filed), June 30, 1980 (per curiam opinion of Third Circuit remanding for ineffectiveness hearing at 622 F.2d 66), or March 30, 1980 (Memorandum Opinion of District Court denying. ineffectiveness claims). Any one of the aforementioned points in time would, as viewed by Mozenter, bar the plaintiff's cause of action as violative of the statutes of limitations as set forth in 42 Pa.C.S. § 5524(2) (providing a two-year limitation period for injury caused by the negligence of another) or § 5525(3) and (4) (allowing a four-year limitation period for a contract implied in law or an express contract not founded upon an instrument).

Trice, in his response to the defendant's new matter, admitted to having read: 1) the October 31, 1978, Affidavit in Support of Motion to Vacate Judgment, along with signing it (Exhibit C); 2) the Memorandum of Law in support of the same dated November 3, 1978, along with executing it (Exhibit D); 3) the June 10, 1980, opinion of the Third Circuit affording him an evidentiary hearing on his Affidavit (Exhibit E); and 4) the March 19, 1981, Memorandum and Order of District Court denying relief after evidentiary hearing (Exhibit F). In each, counsel's effectiveness was either called into question or found not to have been prejudicial to the plaintiff. However, the plaintiff specifically denied understanding the contents of any of the aforecited exhibits. (See Points 5, 7, 9 and 11).

Likewise, in Points 12–17, the plaintiff denied having knowledge of the tortious conduct or breach of contractual duty prior to the August 11, 1982 decision of the Third Circuit holding his trial counsel ineffective and awarding a new trial. As for the applicable statute of limitations, the plaintiff asserted that calculating from the August 11, 1982 date would make his cause of action timely regardless to which statute one looked.

On July 12, 1985, the defendant filed a Motion For Judgment on the Pleadings referring to the affirmative defenses (statutes of limitations) raised in his answer and new matter (*passim* ), the plaintiff's responses of lack of knowledge and misunderstanding thereto, and that the plaintiff's cause of action, although denominated in assumpsit in count I of the complaint, was actually a claim for injury to the person controlled by the two-year statute of limitations under 42 Pa.C.S. § 5524(2). Therefore, it was contended, the statute of limitations began to run when the plaintiff was convicted (February 1, 1975) and/or incarcerated (March 25, 1975). Accordingly, with the initiation of the complaint some nine (9) years after what the defendant interpreted to be an "injury to the person" claim, the institution of the suit in assumpsit was time-barred. This was so, the defendant offered, irrespective of whether one viewed the suit as one in assumpsit (two-year limitation) or breach of contract (six-year limitation).

Additionally, the defendant wrote that the plaintiff's trespass count was controlled by a two-year statute of limitations which began to run when the negligent act complained of was "done or discovered". The defendant continued that here, "[i]nasmuch as plaintiff by Motion filed November 3, 1978, first raised the claim that defendant was negligent, at the very latest he had to have been aware of the negligent act at that time." Thus, a dismissal of the plaintiff's complaint was requested.

In a Memorandum in support of the Motion, the defendant conceded that "[a] retainer agreement was signed by the parties" in or about October of 1974, with representation terminating with the affirmation of the judgment and, thereafter, the denial of a rehearing on February 17, 1977—seven and one-half (7½) years prior to the commencement of the suit.

Under any of the theories of recovery advanced by the plaintiff, be they in assumpsit (contract) or trespass (tort), the defendant proffered that all causes of action were foreclosed because of untimeliness—an affirmative defense which could not be circumvented by mere allegations of

unawareness or lack of expertise on the part of the plaintiff to discover the malpractice, since in 1978 the plaintiff's affidavit in support of his motion to vacate the judgment indicated knowledge of the alleged impropriety.

In answer, the plaintiff denied in relevant part the allegations of his awareness of any factual basis sufficient to characterize his "discovery" of the breach of any contract before the August 11, 1982 Third Circuit ruling in his favor. Similarly, a Memorandum was attached to bolster his position that, despite reasonable diligence, he was unable to ascertain what harm or injury was sustained until the date just stated. Therefore, his suit was timely whether viewed under a two-year (personal injury), four-year or six-year (contract) statute. In any case, the plaintiff urged that his reasonable diligence was a question for the jury to decide.

With all of the aforementioned before the court, the ruling that followed was in favor of the defendant, "it being the opinion of the Court that the statute of limitations in th[e] matter had run." In support of the one paragraph order and opinion was cited *McComsey, supra.* A timely appeal followed.

The plaintiff raises five (5) issues for our consideration, all of which can be disposed of after the resolution of when the right of the plaintiff/client to prosecute his cause of action accrued.[1] Once this is determined, the proper statute of limitations can be applied to ascertain the timeliness of the suit.

█ Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to inform himself properly of the facts and circumstances upon which the right of recovery is based and to institute the suit within the prescribed statutory period. *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). As synthesized most recently by our Supreme Court, this means that, ". . . in determining when

---

1. The cases on this issue appear to be divided into two categories, one of which is relevant to our concern in that it relates to whether an attorney has been negligent through his actions or inactions. See 32 A.L.R. 4th 260, § 2 at 266.

a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Association of Pennsylvania State College and University Faculties*, 504 Pa. 92, 99, 470 A.2d 482, 485 (1983). "Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises[.]" *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

A necessary corollary to the aforementioned precepts is the determination of the elements necessary to prove one's cause of action. As is relevant herein, this Court has had occasion to delineate the criteria which must be established to bring a suit for professional negligence. They are three in number and consist of the following:

1. The employment of the attorney or other basis for duty;
2. The failure of the attorney to exercise ordinary skill and knowledge; and
3. That such negligence was the proximate cause of damage to the plaintiff.

*Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979). Accord *Gans v. Gray*, 612 F.Supp. 608, 615 (E.D.Pa.1985); *Duke & Co. v. Anderson*, 275 Pa.Super. 65, 71, 418 A.2d 613, 616 (1980). Additionally, the plaintiff must establish by a "preponderance of the evidence" that he/she would have prevailed in the underlying action in order to be awarded damages in the malpractice action. This has been interpreted to mean that " ... when it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss." *Duke & Co. v. Anderson*, supra, 275 Pa.Super. at 73–74, 418 A.2d at 617. Accord *Gans v. Gray, supra; Mariscotti v. Tinari*, 335 Pa.Super. 599, 485 A.2d 56 (1984); *Pashak v. Barish*, 303 Pa.Super. 559, 450 A.2d 67 (1982). In the same vein, damages are considered speculative only if the uncertainty concerns the

*fact* of damages rather than the *amount.* See *Pashak v. Barish, supra.*

Examining the last element first, no one would dispute that the plaintiff's incarceration is a harm ("loss") incurred by him. Cf. *Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 18, 481 A.2d 1194, 1200 (1984) ("With [an] intentional tort[ ] such as false imprisonment ..., the harm suffered by plaintiffs is considered to be damage in and of itself." (Citation omitted)). As a result, this *fact* of damages cannot be said to be in doubt. On the contrary, the plaintiff commenced serving his sentence immediately after its imposition in 1975.

With his confinement, the plaintiff, acting pro se, decided to advance his own case on the grounds of the ineffectiveness of trial and appellate counsel (Mozenter). This course was pursued, initially, with the filling out of a federal form captioned "Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody". It was sworn and subscribed to October 31, 1978, and alleged, in detail, three grounds for relief. The first questioned the prosecutorial suppression of evidence supposedly favorable to the plaintiff, which would have warranted a directed verdict. Facts supportive of this claim took up thirteen typed lines on the form. The remaining two contentions centered upon the ineffectiveness of trial counsel in failing to request disclosure of exculpatory evidence ("Spectrogram Voice Exemplar Test"), and in failing to take judicial exception to the trial court's qualification of an expert on voice identification. Twenty typed lines were expended in setting forth the plaintiff's legal contentions regarding the ineptness of counsel.

In a document of even date submitted to the trial judge with the legend "Affidavit In Support Of Motion To Vacate Judgment", the plaintiff averred he had "ineffective assistance rendered" to him in not having had, "through counsel, the opportunity to submit [voice identification] evidence to an independent research facility which specialized in spectrographic analysis, which would have in fact determined [his] total innocence...." (Point 15) Also, this seven-page,

fifteen-point typed document made reference to the plaintiff, prior to jury selection, "informing" counsel of his (plaintiff's) request that "a motion for discovery be submitted, so he could obtain the necessary exemplars" to have them tested by an independent firm. This same plea was made by the plaintiff at the close of the government's case without success. Even after the jury returned its verdict, but prior to sentencing, the "petitioner submitted a pro se motion ... [to] the court, relative to the exemplars." (Point 10)

The course of events continued after sentencing by assailing counsel's stewardship for not raising the voice exemplar matter on appeal. This was followed by a "Memorandum of Law in Support of Motion to Vacate Judgment" filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania on November 3, 1978, by the plaintiff, pro se. In subsection [B], counsel's competency was called into question for permitting, without objection, a government witness (Agent D'Amico) to qualify to identify Trice from voice-prints taken to determine the identity of speakers using the phone to sell/purchase drugs.

Further, it cannot be discounted that this pro se, five-page legal recitation of the law, supportive of the plaintiff's contention relative to prosecutorial suppression of evidence, shows an understanding of the nuances that pervade the law in the area of "voice exemplars". To state otherwise would be to ignore the obvious grasp by the plaintiff of what was transpiring in his case, from a legal standpoint, and his efforts to ameliorate the perceived wrong.

■ Suffice it to say, based on our review of the record, the plaintiff knew or should have known that he had sustained an injury by the date he signed the Motion, Affidavit and Memorandum in support of his contention that trial and appellate counsel was ineffective. Cf. *Chandler v. Johns-Manville Corp.*, 352 Pa.Super. 326, 333, 507 A.2d 1253, 1257 (1986) ("... the signing of the workmen's compensation claim focused on a date by which all of the elements of requisite knowledge came together so that the court could justifiably determine that the appellant had two years from

that date in which to file his complaint."). This is also the point in time by which the plaintiff had lost all confidence in his counsel's stewardship, and should have prompted him to act. Cf. *Held v. Neft*, 352 Pa.Super. 195, 202, 507 A.2d 839, 842 (1986) (" ... the statute of limitations ... began to run from the time Held lost confidence in Dr. Neft....").

We find that, premised on the defendant's cessation of representation of the plaintiff in 1977[2] and the plaintiff's cognizance of his *legal* rights, as evidenced by the trio of memorandae filed with the trial court, that the plaintiff's cause of action bore fruition in 1978. Thus, it matters not which one of the statutes of limitations we use to gauge the timeliness of the plaintiff's suit, be it the two-year (42 Pa.C.S. § 5524(2)) or four-year (42 Pa.C.S. § 5525(3) and (4)) law, the fact remains that the complaint was filed beyond the strictures of the *applicable* statutes[3] when presented to the prothonotary of Philadelphia County in August of 1984.[4]

Therefore, our determination that the plaintiff knew or had reason to know of his injury by 1978 dispenses with the need to resort to the "discovery rule", which permits *deferral of the accrual of a cause of action* until the injured party knows or should know that he has sustained an injury or knows or should know that an injury of which he is aware is attributable to the fault of another. See *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973

---

**2.** Cf. *Levin v. Berley*, 728 F.2d 551, 554 (1st Cir.1984) (" ... attorney malpractice cause of action only accrues when attorney-client relationship ends." (Citation omitted)).

**3.** Unlike the plaintiff, we fail to discern how § 5527(2)'s six-year statute of limitations is applicable to the case at bar, given the absence in the record of an "instrument in writing" and, as referred to in § 5527(6), the fact that the cause of action *is* subject to another limitation—mainly, § 5524(2) ("An action to recover damages for injuries to the person....") (Trespass), or § 5525(3) (Express contract not founded upon a writing or § 5525(4) (Contract implied in law) (Assumpsit). See also 2 A.L.R. 4th 284.

**4.** The plaintiff's ability to pursue his complaint under the appellation of assumpsit or trespass (see *Guy v. Liederbach*, 501 Pa. 47, 57, 459 A.2d 744, 748 (1983)), requires the assessment of the cause of action under both time-statutes.

(1985). Ergo, the plaintiff need not have waited until the ruling of the Third Circuit on his ineffectiveness claim. Cf. *Moore v. McComsey, supra,* 313 Pa.Super. at 271, 459 A.2d at 845 ("The fact that appellant filed a P.C.H.A. petition in the criminal action alleging ineffective assistance of counsel was entirely inadequate to toll the running of the statute on the civil action.").

Finally, we note that it was proper for the court below to have decided whether the statute of limitations had run, since the question was one of law for the judge, and not a factual determination, i.e., what was a reasonable period of time to have delayed in commencing suit, which would have been for a jury to decide. *Smith v. Bell Telephone,* 397 Pa. 134, 153 A.2d 477 (1959).

We have scrutinized all of the plaintiff's claims,[5] of which the timeliness question is unique in that it has not yet been treated, and found them to be wanting. Accordingly, we will affirm the order of the lower court granting the defendant's pretrial motion for judgment on the pleadings.

---

**5.** For the sake of clarification, we wish to note that we did not discuss in detail the first, second and third prongs of a malpractice suit. Rather, we incorporated proof of same in our discussion of the case as a whole, and as part and parcel of the examination of the "accrual" of the cause of action issue.