592 A.2d 1306

**WEST PENN POWER COMPANY, 800**
**Cabin Hill Greensburg, PA 15601**

v.

**Jack B. PIATT, 90 West Chestnut Street Washington, PA 15301**
**Jack B. Piatt, Trading as Millcraft Center Limited Partnership, a Partnership, Washington, PA 15301, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1991.

Filed May 16, 1991.

Reargument Denied July 29, 1991.

468

Debra B. Todd, Pittsburgh, for appellant.

Clarence A. Crumrine, Greensburg, for appellee.

Before ROWLEY, President Judge, and WIEAND, and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an August 9, 1990 order that (1) granted the motion for summary judgment of appellee, West Penn Power Co. ("West Penn"), and (2) granted judgment on the pleadings in favor of West Penn on appellant's counterclaim.[1] The trial court granted judgment

---

1. The court's order also directed the Prothonotary to enter judgment against appellants.

premised upon application of this Court's decision in *West Penn Power v. Nationwide Insurance Co.*, 209 Pa.Super. 509, 228 A.2d 218 (1967). On appeal, appellant, Jack B. Piatt and Jack B. Piatt, t/a Millcraft Center Limited Partnership ("Millcraft"), contends that *Nationwide* is distinguishable from this case because the issues of West Penn's negligence and the defendant's detrimental reliance thereon were never raised in *Nationwide*. For the reasons set forth below, we agree with appellant's argument that *Nationwide* does not bar his defense of detrimental reliance. Accordingly, we reverse the order below and remand for trial.

The facts underlying this appeal, aptly summarized by the trial court, are as follows:

On March 7, 1988, West Penn Power Company (West Penn) filed a praecipe for writ of summons against the defendants, Jack B. Piatt and Jack B. Piatt, trading as Millcraft Center Limited Partnership, a partnership (collectively referred to as Millcraft). In the complaint against the defendants brought on August 29, 1988, West Penn has sought to recover amounts due as a result of underbilling Millcraft for electrical services at its commercial building, 90 West Chestnut Street, Washington, Pennsylvania. In its answer, new matter and counterclaim [filed on October 20, 1988], Millcraft has alleged that it is entitled to recover any amounts determined by the court to be owed to West Penn, because Millcraft reasonably and justifiably relied to its detriment on West Penn's negligence and representations when West Penn established the rates.

During May 1977, the electric meter in question was installed by West Penn on Millcraft's premises. West Penn billed Millcraft for electrical consumption between May 1977 and September 22, 1987. Because it had inadvertently used an incorrect multiplier in calculating the amount of each monthly statement, West Penn contends that the amounts charged to Millcraft were approximately 75% of the amount which should have been charged.

In October 1987, West Penn informed Millcraft that the utility had discovered an error in the billings, attributing the error to a mistake by the West Penn technician who had installed the electric meter. During a change in the electric metering on the premises on September 19, 1987, West Penn discovered that the wrong constant had been used since the installation of the original meter in 1977. When a technician reads the meter, he notes the amount shown and then the company applies a constant by which that amount of electricity indicated is multiplied in order to arrive at the actual electric consumption.

No dispute exists about the facts. To each bill from 1977 to September 1987, Millcraft responded by paying the amount demanded. Since 1976, Millcraft has leased parts of the building to various tenants, passing to the tenants the cost of utilities. No question exists that Millcraft calculated its rental rates in part upon the electrical rate charged to it by West Penn. Thus, Millcraft says it cannot recover these rental rates.

West Penn has admitted that its calculations from 1977 to September 1987 were erroneous, conceding that the amounts actually billed have always been made by West Penn's representatives. West Penn's Answers to Request for Admissions. Under its contract with Millcraft, the utility company provided that the rate for electric service would be West Penn's Rate Schedule 30, which was on file with the Pennsylvania Public Utility Commission. The reason for the underbilling was that West Penn had used an incorrect multiplier of 1125 applied to the meter readings, whereas the correct multiplier should have been 1500. For the electric service from March 1984 (allowing recovery for four years under the statute of limitations) to September 1987, Millcraft paid the amount of $237,804.14; if the correct multiplier had been used, pursuant to the tariff Millcraft should have paid the sum of $313,082.43, the difference being $75,278.29. In addition, the difference reflects the changes in rates approved by the Pennsylvania Public Utility Commission.

Trial Court Opinion, August 9 1990 at 2–4. On May 10, 1989 West Penn moved for judgment on the pleadings with regard to Millcraft's counterclaim, and summary judgment on its Complaint. After briefing and argument, the trial court granted both motions on August 9, 1990, and judgment was entered in favor of West Penn. This timely appeal followed.

■ A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Pa.R.C.P. 1035; *Hoffman v. Sun Pipe Line Co.*, 394 Pa.Super. 109, 111, 575 A.2d 122, 124 (1990). *See also Hedlund Mfg. Co. v. Weiser*, 517 Pa. 522, 539 A.2d 357 (1988). On appellate review, an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion. *Hoffman v. Sun Pipe Line Co., supra* (citations omitted). Similarly, in reviewing the appropriateness of judgment on the pleadings, we are guided by the following principles:

> Judgment on the pleadings should not be entered where there are disputed issues of material fact. The court must treat the motion as if it were a preliminary objection in the form of a demurrer. In conducting this inquiry, the court should confine its consideration to the pleading and relevant documents. Since a motion for judgment on the pleadings is not a motion for summary judgment, no affidavit or depositions may be considered, nor is any matter before the court except the pleadings.

*Del Quadro v. City of Philadelphia*, 293 Pa.Super. 173, 176, 437 A.2d 1262, 1263 (1981) (citations omitted). *See also* Pa.R.C.P. 1034; *Trice v. Mozenter*, 356 Pa.Super. 510, 511–12, 515 A.2d 10, 10 (1986) (judgment on pleadings should be granted only in cases clear and free from doubt); *Trost v. Clover*, 234 Pa.Super. 255, 257, 338 A.2d 630, 631 (1975) (in evaluating motion for judgment on pleadings, court must

accept as true all averments of fact by opposing party which are material and relevant, but not his inferences or conclusions of law).

Here, as noted above, the trial court's disposition was premised on our decision in *Nationwide*. The court held that *Nationwide* required that judgment be entered in West Penn's favor, and that *Nationwide* banned all equitable defenses to West Penn's action to collect arrearages as a result of its undercharges. *See* Trial Court Opinion, *supra* at 6, 8–9. Appellant, however, contends that *Nationwide* does not control this case. Specifically, appellant argues that *Nationwide* is distinguishable because the issues of West Penn's negligence and the defendant's detrimental reliance thereon were never presented to the *Nationwide* court. Because this case is distinguishable from *Nationwide*, appellant argues, the trial court was not bound to follow *Nationwide* in deciding whether to grant summary judgment and judgment on the pleadings in appellant's favor. We agree.

In *Nationwide*, as here, West Penn sought to recover funds lost as a result of its underbilling of a customer, Nationwide Insurance Co. ("Nationwide Insurance"). In its defense, Nationwide Insurance averred facts to constitute defenses of accord and satisfaction, payment, estoppel and breach of contract. The trial court ruled that the only issue was whether Nationwide Insurance had paid in full for the electricity furnished by West Penn. On appeal, this court agreed that the only issue properly raised concerned whether Nationwide Insurance had paid in full for the electricity. We also held that Nationwide Insurance had failed to sustain its defenses. In so holding, we noted that a utility can only charge the customer the lawful rate as tariffed, and cannot provide customers with preferential treatment.[2]

---

**2.** The *Nationwide* court cited 66 P.S. § 1143 for the proposition that public utilities are prohibited from giving customers preferential rates for service. That Section was the precursor of 66 Pa. C.S.A. § 1303, which provides:

No public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corpora-

However, we went on to evaluate the defenses raised by Nationwide Insurance, and rejected them because they were without merit on the facts alleged. The important point to be drawn from the analysis in *Nationwide* is that this Court did not suggest that there is a general prohibition against the assertion of defenses to a public utility's attempt to recover amounts it undercharged a customer. Furthermore, our examination of *Nationwide* indicates that no such prohibition exists.[3] The *Nationwide* court merely held that

> tion, or municipal corporation a greater or less rate for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto. The rates specified in such tariffs shall be the lawful rates of such public utility until changed, as provided in this part. Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron.

*Id.*

Section 1502 prohibits discrimination of any kind in the provision of public utility service:

> No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but this section does not prohibit the establishment of reasonable classes of service.

*Id.*

3. We are aware that the *Nationwide* court quoted the following language in its opinion:

> regardless of the source of the alleged rights, the granting of free service to [the school district] was discriminatory, and a violation of the ... Public Utility Law.

*Nationwide, supra,* 209 Pa.Super. at 512, 228 A.2d at 220 (citations omitted). This language came from our decision in *Scranton Electric Co. v. Avoca School Dist.,* 155 Pa.Super. 270, 37 A.2d 725 (1944). In *Scranton v. Avoca,* a utility sought to recover arrearages caused by the defendant's failure to pay its electric bills. The above-quoted language was employed by the court in rejecting the defendant's claim that it was not obligated to pay because of an agreement with the company's predecessor that service would be provided free of charge. The court's decision in *Scranton v. Avoca* was based on the sound principle that utilities provide services for the public good, and should therefore be strictly regulated and have little discretion in setting their rates. *Id.,* 155 Pa.Superior Ct. at 274, 37 A.2d at 727. Undercharging customers, under this theory, is against the public interest as it provides those customers with a preferential rate. Because the utility

a utility is entitled to recover amounts it undercharged a customer, at least when that customer failed to allege sufficient facts in its defense to raise a disputed issue of material fact or show that the utility is not entitled to judgment as a matter of law. *Nationwide* leaves open the question of whether a utility is entitled to recover amounts it undercharged a customer when that customer asserts a meritorious defense. Thus, the trial court could properly have granted appellee summary judgment and judgment on the pleadings based on *Nationwide* only if the pleadings indicated that appellee was entitled to judgment as a matter of law on appellant's counterclaim, *see Hoffman v. Sun Pipe Line Co., supra,* and the counterclaim was clearly and without a doubt meritless. *See Trice v. Mozenter, supra.*

■ The record reveals the following facts. West Penn undercharged Millcraft for electric service provided from May 31, 1977 to September 22, 1987. *See* Complaint, August 25, 1988. That undercharging was solely caused by the mistake of West Penn's technician, who installed the meter by which Millcraft's electric consumption was calculated. *See* Trial Court Opinion, *supra* at 2–3. Millcraft is a commercial landowner, whose revenues are generated from rents charged tenants at the property in question. *Id.* at 3. Millcraft calculated the rents it charged its tenants based in part on its utility bills. *Id.* Millcraft has undercharged its tenants based on its reliance on those bills. *Id.* Construing these allegations in the light most favorable to Millcraft, we find that Millcraft has pleaded sufficient facts to establish its defense of detrimental reliance. *Cf. Germantown Mfg. Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985); *Love v. Metropolitan Life Ins. Co.,* 99 F.Supp. 641 (E.D.Pa. 1951). Thus, West Penn was not entitled to prevail on appellant's counterclaim, and the trial court erred in grant-

has no authority to grant preferences, the customer has no entitlement to such a preference. Here, however, we are faced with an entirely different situation in which no agreement for free service is alleged, and a customer has innocently relied, to his detriment, on a utility's negligent misrepresentations of what its rates were. Thus, *Scranton v. Avoca* does not preclude appellant's counterclaim.

ing judgment on the pleadings in West Penn's favor. *See Hoffman v. Sun Pipe Line Co., supra.* For the same reason, it is clear that appellee was not entitled to judgment as a matter of law. Thus, the trial court erred in entering summary judgment in appellee's favor, also. *See Trice v. Mozenter, supra.*

 In summary, *Nationwide* does not preclude assertion of appellant's counterclaim, and a review of the pleadings reveals that appellant may be entitled to relief on the issues raised therein. Under these circumstances, the trial court erred in concluding that (1) West Penn was entitled to summary judgment as a matter of law, and (2) West Penn was entitled to judgment on the pleadings with regard to Millcraft's counterclaim. Thus, we are compelled to reverse the order below and remand for trial.

Order reversed. Case remanded for trial.

Jurisdiction relinquished.

WIEAND, J., files a concurring statement.

WIEAND, Judge, concurring.

I join the majority's analysis. I write separately only to note my disagreement with any suggestion that the granting of a motion for summary judgment is discretionary with the trial court. Whether to grant such a motion is purely a question of law, and an order entering summary judgment will be reversed whenever an error of law has been committed.