**BOROUGH OF MIFFLINBURG,**
Appellee,

v.

**William A. HEIM, t/d/b/a Scarlet "D", Appellant,**

v.

**Walter J. RAFACZ, t/d/b/a Technical Services Company, Appellee.**
(Two Cases).

Superior Court of Pennsylvania.

Argued Sept. 25, 1997.

Filed Dec. 31, 1997.

Graham C. Showalter, Lewisburg, for appellant.

Paul W. Brann, Lewisburg, for Borough of Mifflinburg, appellee.

Robert J. Menapace, Sunbury, for Walter J. Rafcz, appellee.

Before CAVANAUGH, HUDOCK and TAMILIA, JJ.

CAVANAUGH, Judge:

These consolidated appeals are from the orders entered September 25, 1996, which granted Summary Judgment in favor of appellees, the Borough of Mifflinburg and Walter Rafacz, t/d/b/a Technical Services Company. We affirm.

Appellant is the owner of a hotel/restaurant, the Scarlet "D," (hereinafter "the restaurant") located in the Borough of Mifflinburg. Mifflinburg provides electricity for all residents and businesses within its borders. In October of 1988, appellant arranged for the re-classification of the restaurant's electricity usage from "commercial" status to "GLP–2" status. In order to meet the requirements of this re-classification, Walter Rafacz, an independent contractor for the Borough, installed a new electric meter at the restaurant. However, in calculating the electric usage at the restaurant, the new meter incorrectly employed a multiplier of 40 (forty) instead of employing the correct multiplier of 80 (eighty). This resulted in the restaurant's being underbilled by approximately 50% for the electricity it purchased.[1] The error was discovered, and appellant informed thereof, in December, 1993. However, appellant alleges that he did not become aware of Mr. Rafacz's role in the miscalculation until October of 1995. Appellant's subsequent petition for leave to join Mr. Rafacz as an additional defendant was granted by the court, resulting in Mr. Rafacz becoming a party to the action by complaint filed January 2, 1996.

It is undisputed that between December 19, 1989 and November 15, 1993, appellant was underbilled by $29,717.20. Appellant repaid a portion thereof, leaving an unpaid balance of $26,518.65. When appellant refused to pay the remaining amount, the Borough sued to collect the unpaid balance under the authority of *West Penn Power Company v. Nationwide Mutual Insurance Co.*, 209 Pa.Super. 509, 228 A.2d 218 (1967) (hereinafter *West Penn I* ).

In *West Penn I*, due to an error in billing, the "customer was billed for less than the amount of electric service supplied and the customer paid the bills as presented." *Id.* at 510–11, 228 A.2d at 219. The power company brought suit "for the difference between that billed and paid and the amount that should have been billed and paid based on the quantities [kilowatt hours] actually supplied." *Id.* at 511, 228 A.2d at 219. In its answer, under new matter, the customer averred facts to constitute the defenses of accord and satisfaction, payment, estoppel, and breach of contract. The power company filed preliminary objections thereto, in the nature of a motion to strike and in the nature of a demurrer, alleging that the only issue the court could consider was whether the customer had paid in full for the amount of electricity it actually received. The court agreed and granted the motion to strike as well as the demurrer. It explained that, because the tariff or rate to be charged by a utility for electricity is established by law, that "[t]he only issue presented by the pleadings relates to the quantity of electricity (KWHRS) served by plaintiff to defendant ... " *Id.*

On appeal, the lower court's actions were affirmed by a panel of this court which held:

---

1. An electric meter installed in a facility that utilizes a large amount of electricity does not have the capacity to measure all the electrical current flowing into the facility. Rather, a meter installed in such a facility measures only a percentage of the electricity provided. The meter then multiplies that percentage by a factor which is calculated by the installing technician in order to arrive at the actual amount of electricity provided. In the instant case, the multiplier calculated by Mr. Rafacz was incorrect. The meter, which should have been multiplying the percentage of electricity it measured by a factor of 80, was only multiplying that percentage by a factor of 40, resulting in the restaurant being underbilled for the electricity it was actually provided by approximately 50%.

"We agree with the court below that the only issue is whether the appellant has paid in full for electricity furnished it by the utility. A utility can only charge the customer the lawful rate as tariffed. It cannot make a special contract with the customer. There can be no favored treatment for a customer. It cannot demand or receive directly or indirectly a greater or lesser rate than specified in its tariff."

*Id.* at 511–12, 228 A.2d at 220.

The *West Penn I* panel went on to analyze the appellant's defenses as raised in its new matter, and determined that, under the factual circumstances of the case, the defenses of accord and satisfaction, payment, estoppel, and breach of contract were not available to appellant. *Id.* In the present case, the Borough disclosed the existence of *West Penn I, supra,* to counsel for appellant in December of 1993. However, the Borough admitted in its appellate brief and at oral argument before this court that it did not disclose to appellant's counsel the existence of *West Penn Power Co. v. Piatt,* 405 Pa.Super. 467, 592 A.2d 1306 (1991) (hereinafter *West Penn II*).[2]

In *West Penn II*, due to a "mistake by the West Penn [Power Company] technician who had installed the electric meter" in appellant's commercial building, which resulted in the use of "an incorrect multiplier in calculating the amount of each monthly statement," appellant was underbilled for the electricity provided by the power company to its commercial building for a period of ten years. *Id.* at 469–70, 592 A.2d at 1307. The power company brought suit to recover funds lost as a result of its underbilling. Appellant counterclaimed, raising the defense of detrimental reliance. Appellant was a commercial landowner whose revenues were generated by the rents it charged to tenants occupying the building in question. Appellant calculated its rental fees, in part, on the expenditures it made for utility services to the building. Therefore, for the ten year period in question, because the power company had been undercharging appellant for electricity, appellant had been undercharging it tenants for rent.

The power company moved for judgment on the pleadings with regard to appellant's counterclaim, and for summary judgment on its complaint. After briefing and argument, the court granted both motions, premised upon application of *West Penn I, supra.* On appeal, a panel of this court reversed the lower court and remanded for trial. In doing so, the panel clarified the holding in *West Penn I:*

In [*West Penn I*], as here, West Penn sought to recover funds lost as a result of its underbilling of a customer, Nationwide Insurance Co. ("Nationwide Insurance"). In its defense, Nationwide Insurance averred facts to constitute defenses of accord and satisfaction, payment, estoppel and breach of contract. The trial court ruled that the only issue was whether Nationwide Insurance had paid in full for the electricity furnished by West Penn. On appeal, this court agreed that the only issue properly raised concerned whether Nationwide Insurance had paid in full for the electricity. We also held that Nationwide had failed to sustain its defenses. In so holding, we noted that a utility can only charge the customer the lawful rate as tariffed, and cannot provide customers with preferential treatment. However, we went on to evaluate the defenses raised by Nationwide Insurance, and rejected them because they were without merit on the facts alleged. The important point to be drawn from the analysis in [*West Penn I*] is that this Court did not suggest that there is a general prohibition against the assertion of defenses to a public utility's attempt to recover amounts it undercharged a customer. Furthermore, our examination of [*West Penn I*] indicates that no such prohibition exists. The [*West Penn I*] court merely held that a utility is entitled to recover amounts it undercharged a customer, at least when that customer failed to allege sufficient facts in its defense to raise a disputed issue of material fact or show that the utility is not entitled to judgment as a matter of law. [*West Penn I*] leaves open the question of whether a utility is entitled to recover

---

**2.** The possible effect of this non-disclosure is not before us as an issue.

amounts it undercharged a customer when that customer asserts a meritorious defense. Thus, the trial court could properly have granted appellee summary judgment and judgment on the pleadings based on [*West Penn I*] only if the pleadings indicated that appellee was entitled to judgment as a matter of law on appellant's counterclaim, and the counterclaim was clearly and without a doubt meritless.

*West Penn II*, at 472–74, 592 A.2d at 1308–09 (footnotes and citations omitted).

The *West Penn II* court then determined that appellant had pleaded sufficient facts to establish its defense of detrimental reliance and that West Penn was, therefore, not entitled to prevail on appellant's counterclaim. For the same reason, the panel determined that West Penn was not entitled to judgment as a matter of law. Therefore, the *West Penn II* panel held that the trial court's grant of judgment on the pleadings in favor of West Penn as well as its grant of Summary Judgment in favor of West Penn constituted error requiring reversal and remand for trial.

In sum, it is fair to say that *West Penn II* put a fine point on *West Penn I.*

In the case presently before us, appellant avers that he did not become aware of the existence of *West Penn II, supra,* until July 25, 1996. On August 6, 1996, appellant filed a Petition for Leave to File an Amended Counterclaim and New Matter citing *West Penn II, supra,* and asserting the defense of detrimental reliance. The court issued a rule returnable date of August 20, 1996, for appellees to show cause why appellant's petition to amend the pleadings should not be granted. By the court's order dated August 22, 1996, and filed of record on August 26, 1996, appellant's petition to amend the pleadings was denied. On September 23, 1996, appellant filed a motion requesting that the court:

1. Amend its order of August 22, 1996 by adding that the Court is of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter; and

2. Stay proceedings in this matter until the appellate court disposes of Defendant's Interlocutory Appeal.

Appellant's motion was denied by order dated September 30, 1996, and filed October 1, 1996. In the meantime, the Borough filed its motion for summary judgment, which was granted by the court on September 25, 1996, in favor of the Borough and against appellant in the amount of $24,018.83. On that same date, the court granted the motion for summary judgment of additional defendant, Mr. Rafacz, based on the statute of limitations. Appellant appeals from both orders.

## I. APPEAL AT 00843 HARRISBURG 1996

In this appeal from the order which granted Summary Judgment to the Borough, appellant raises two issues for our review:

1. THE LOWER COURT ERRED IN DENYING APPELLANT'S PETITION FOR LEAVE TO FILE AMENDED COUNTERCLAIM AND NEW MATTER TO PLAINTIFF'S COMPLAINT WHERE APPELLEE AND ADDITIONAL DEFENDANT FAILED TO DEMONSTRATE THAT THEY WOULD BE PREJUDICED BY THE AMENDMENT.

2. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE WHEN IT SHOULD HAVE GRANTED LEAVE TO APPELLANT TO FILE AN AMENDED COUNTERCLAIM AND NEW MATTER TO PLAINTIFF'S COMPLAINT AND APPELLANT'S NEW MATTER CONTAINED APPELLANT'S DEFENSES.

The frame of appellant's challenge to the propriety of the order which granted Summary Judgment to the Borough is undergirded by the allegation that the court erred when it denied appellant's motion to amend the pleadings and refused to certify the issue for appeal. The essence of appellant's argument is that, had the court allowed appellant to amend the pleadings and assert the defense of detrimental reliance, the court would not have subsequently granted summary judgment because there would have then existed a genuine issue of material fact to be

submitted to the jury. Nonetheless, it is clear that appellant's chief issue in this appeal is the allegation that the court erred in denying his motion to amend the pleadings. For the reasons that follow, we find that the court did not err and, accordingly, appellant's allegation to the contrary must be dismissed as meritless.

At the outset, we address the appealability of the issue raised. Prior to the enactment of new Pa.R.A.P 341, which relates to final orders, the law of this Commonwealth provided that:

> In general, orders which deny or grant a party's request to amend the pleadings are interlocutory and, therefore, not immediately appealable. However, an order which denies a party's request to amend an answer to plead an affirmative defense is considered final and is, therefore, immediately appealable. This is so because denial of a motion to amend to plead an affirmative defense precludes the introduction of proof at trial of what might constitute a complete defense, effectively putting the pleading party "out of court."

*Horowitz v. Universal Underwriters,* 397 Pa.Super. 473, 477, 580 A.2d 395, 397 (1990) (citations omitted).

However, the comments to new Pa.R.A.P. 341 provide in pertinent part: [3]

> The following is a partial list of orders that are no longer appealable as final orders pursuant to Rule 341 but which in an appropriate case might fall under Rules 312 (Interlocutory Appeals by Permission) or 313 (Collateral Orders) of this chapter.
>
> * * * * *
>
> (2) an order denying a defendant leave to amend his answer to plead an affirmative defense;

▮ Therefore, the order which denied appellant's petition to amend the pleadings was interlocutory. It is well settled that this

court may, in its discretion, grant review of an interlocutory appeal by permission, if the order complained of has been certified by the court pursuant to 42 Pa.C.S.A. § 702, which provides in pertinent part:

> (b) Interlocutory appeals by permission. When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such an interlocutory order.

42 Pa.C.S.A. § 702(b).

▮ In the instant case, the court order denying appellant's petition to amend did not opine that a controlling question of law was involved and that an immediate appeal would materially advance the termination of the matter. Accordingly, appellant, seeking review of the order, properly petitioned the court to amend its order to include the language contained in 42 Pa.C.S.A. § 702(b).[4] The court, however, denied appellant's petition to amend its order to include the specific language contained within 42 Pa.C.S.A. § 702(b). Therefore, the order remained interlocutory.

Appellant now asks us to consider the merits of his challenge to the interlocutory order which denied his petition to amend the pleadings. This court has previously held:

> We note for the benefit of counsel, the trial court and the Bench and Bar, in general, that the proper procedure to be followed if the trial court's Order does not include the requisite certification pursuant to Section 702(b) is to request the court to amend its Order accordingly. If the court refuses to

---

**3.** We note that new Rule 341 became effective July 6, 1992, and is applicable to all actions commenced after that date.

**4.** Pa.R.A.P. 1311, provides "[a]n application for an amendment of an interlocutory order *to set* forth expressly the statement specified in 42 Pa.

C.S § 702(b) shall be filed with the lower court or other government unit within 30 days after the entry of such interlocutory order and permission to appeal may be sought within 30 days after entry of the order as amended."

amend its Order to include the requisite certification, it must do so by Order denying the amendment. The appellant must then challenge the Order denying the amendment by filing a Petition for review pursuant to Chapter Fifteen of the Rules of Appellate Procedure, rather than a Petition for Permission to appeal under Chapter Thirteen of the Appellate Rules. *Silver v. Downs*, 493 Pa. 50, 425 A.2d 359 (1981); *Pennsylvania Turnpike Comm'n v. Jellig*, 128 Pa.Commw. 171, 563 A.2d 202 (1989), *appeal denied*, 525 Pa. 606, 575 A.2d 571 (1990); 42 Pa.C.S.A. § 5574; Pa. R.App.P. 312; Comment following Pa. R.App.P. 1311. This Comment states in relevant part:

> Where the ... lower court refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. ...

Darlington, [G.R. Darlington, K.J. McKeon, D.R. Schuckers & K.W. Brown, 1 *Pennsylvania Appellate practice* 293–94 (1986)], gives further guidance where, as here, the trial court has not amended its otherwise unappealable Order:

> [A] party filing a petition for review from an order denying certification should incorporate into the petition for review all of the components which are required to be included within a petition for permission to appeal. *See* Pa.R.A.P. 1312. In such a case, the best practice is to prepare a document which conforms in every respect to the requirements of a petition for permission to appeal, but label the document a 'Petition for Review (from the order of the Court of Common Pleas of _____ County refusing to amend its order pursuant to Pa.R.A.P. 1311(b)[sic]'. In presenting the 'statement of reasons,' emphasis should be placed on why the trial court erred in failing to amend its order *viz.*, that the underlying interlocutory order the petitioner seeks to appeal involves a 'controlling question of law as to which

there is a substantial ground for difference of opinion' and 'immediate appeal from the order may materially advance the ultimate termination of this matter.' The petition also should stress that the refusal to amend was 'egregious.'

At 295–96.

*Hoover v. Welsh*, 419 Pa.Super. 102, 106 n. 2, 615 A.2d 45, 46–7 n. 2 (1992).

In the instant case, by failing to file a petition for review, appellant failed to follow the prescribed procedure for raising his challenge to the interlocutory order of the trial court. That appellant failed to properly achieve an interlocutory appeal under the complex method prescribed by the official comments to Pa.R.A.P. 1311, however, raises the question whether such failure necessarily results in the issue being irretrievably lost for the purposes of appellate review. We hold that it does not.

■ We must first decide if the court erred in refusing the amendment and certifying the question for review.

■ "A trial court enjoys broad discretion in evaluating amendment petitions." *Capobianchi v. BIC Corp.*, 446 Pa.Super. 130, 134, 666 A.2d 344, 346 (1995), *appeal denied* 544 Pa. 599, 674 A.2d 1065 (1996). A motion to amend the pleadings is addressed to the sound discretion of the trial court and the trial court's determination is not to be disturbed on appeal absent an abuse of that discretion. *Sejpal v. Corson, Mitchell, Tomhave, & McKinley, M.D.'S., Inc.*, 445 Pa.Super. 427, 665 A.2d 1198 (1995). In exercising its discretion whether to allow an amendment to the pleadings, a trial court should liberally allow such amendment so as to permit the case to be decided on the merits; however, an amendment should not be allowed where it will present an entirely new cause of action or will unfairly surprise or prejudice the opposing party. *Id.*

■ While the general rule provides that a party must establish more than undue delay to overcome Pennsylvania's liberal amendment policy, *Carpitella by Carpitella v. Consolidated Rail Corp.*, 368 Pa.Super. 153, 157, 533 A.2d 762, 764 (1987), long unexplained

delays between the time an original answer is filed and the time an amendment is sought, have been deemed, in some cases, sufficient to justify denial of the request to amend. *See Com. Dept. of Transp. v. Bethlehem Steel,* 486 Pa. 186, 404 A.2d 692 (1979) (in which our supreme court upheld the commonwealth court's denial of appellant's petition to amend his answer to plead an affirmative defense where the petition was filed more than three years after the original answer and over five months after the pleadings had been closed); *Kenney v. Southeastern Pennsylvania Transp. Authority,* 122 Pa.Cmwlth. 1, 551 A.2d 614 (1988) (denial of motion to amend pleadings to include affirmative defense was proper where slightly more than three years elapsed between the original answer and the motion to amend); *Hightower v. Bekins Van Lines Co.,* 267 Pa.Super. 588, 407 A.2d 397 (1979) (affirmative defense raised in amended answer properly stricken where two and one-half years elapsed between the filing of the original answer and amended answer). *See also Ganassi v. Buchanan Ingersoll, P.C.,* 373 Pa.Super. 9, 540 A.2d 272 (1988).

In the instant matter, the trial court expressly relied on our supreme court's decision in *Com. Dept. of Transp. v. Bethlehem Steel, supra,* and offered the following rationale for denying appellant's motion to amend:

This matter was commenced by the filing of a praecipe for Writ of Summons on August 11, 1994. The Complaint was filed on April 10, 1995. The pleadings were closed in late February or early March of 1996. After a pretrial conference this Court issued a Trial Order scheduling voir dire in the matter for September 3, 1996, with trial to be commenced at 9:00 a.m. on September 26, 1996. On August 6, 1996, approximately five months after the pleadings had closed, the Defendant filed his Petition for Leave to Amend in which he seeks permission of the court to amend his pleadings to assert a counterclaim and defense of detrimental reliance. The Defendant's explanation for the delay in seeking to amend the pleadings was that the Defendant relied on the Plaintiff's representation as to the state of the law in this matter, and that the Defendant recently discovered a five year old case favorable to the Defendant [*West Penn II, supra*].

* * * * *

No explanation has been tendered by the Defendant as to what precluded the Defendant from discovering the 1991 case of [*West Penn II*]. In a similar fact situation where the pleadings had been closed for five months and discovery had been undertaken the Supreme Court affirmed a refusal to permit an amendment to the answer filed in the matter [*Comm. Dep't. of Transp. v. Bethlehem Steel, supra*].

After careful review of the record, we agree with the court that appellant did not offer any valid reason to explain why he did not discover the existence of *West Penn II* until the summer of 1996. Any analysis of the viability of *West Penn I,* a case with which he was admittedly familiar since at least December of 1993, would have revealed the existence of *West Penn II.* Given the decisional precedent supporting the trial court's order and bearing in mind that *West Penn II* was decided some five years prior to appellant's petition to amend the pleadings, which was itself filed some fifteen months after his original answer with new matter, we cannot find that the court's denial of appellant's petition to amend and refusal to certify the question constituted an abuse of the court's broad discretion.

For the reasons stated above we decide 1) the failure to allow the amendment or to certify the question for appeal has not been waived and is subject to our instant review,[5] and 2) we affirm the order of court which denied the petition for leave to amend the pleadings.

Addressing appellant's remaining challenges to the order granting summary

---

5. We refuse to find waiver by reason of failure to employ the highly sophisticated possible avenue of appeal outlined above.

judgment, we briefly note our well-settled standard of review:

> On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases.

*Kingston Coal Co. v. Felton Mining Co.*, 456 Pa.Super. 270, 277, 690 A.2d 284, 287 (1997) (quoting *Brooks v. Sagovia*, 431 Pa.Super. 508, 511, 636 A.2d 1201, 1202 (1994)).

 Appellant argues that he had, in fact, pleaded affirmative defenses to the Borough's complaint in certain paragraphs of his original answer and new matter which raised issues of material fact which would require trial. Appellant points to paragraph 15 of his answer and new matter which alleges "Defendant would be prejudiced by Plaintiff's negligence if Plaintiff were successful in this matter in that Plaintiff is attempting to collect $26,621.25 from Defendant which amount is onerous for a small business person to have to pay." Appellant alleges that "the averments of Appellant's Paragraph 15 arguably raise the defense of detrimental reliance, which should be considered by a jury at trial." However, we cannot agree that the allegedly "onerous" amount of his debt fairly raises the issue of his alleged "detrimental reliance" on appellee's underbilling for electric service. *West Penn II, supra.* This argument is rejected.

Finally, appellant alleges, without any supporting argument or rationale, that paragraphs 14, 16 and 17 of his answer and new matter to appellee's complaint also comprise "defenses" which raise "disputed issues of

material fact" and concludes "[c]onsequently, where Appellant has filed an Answer and New Matter which contain Appellant's defenses, the lower court should have denied Appellee's Motion For Summary Judgment." We have carefully reviewed the allegations contained within the paragraphs in question and conclude that they do not contain or raise disputed issues of material fact. The court's order granting Summary Judgment to appellee Borough of Mifflinburg was proper. Accordingly, the order is affirmed.

## II. APPEAL AT 00842 HARRISBURG 1996

This appeal is from the order which granted summary judgment to additional defendant/appellee, Walter Rafacz, t/d/b/a Technical Services Company. Summary judgment was entered on the grounds that appellant's claim against Mr. Rafacz was filed after the applicable two year statute of limitations period had expired. We are persuaded that summary judgment was properly entered and affirm.

Appellant was aware that he had been underbilled for electricity due to the use of an incorrect multiplier in December 1993.[6] However, appellant claimed that he did not become aware of Rafacz's role in the error until October 10, 1995, after he reviewed a letter from Rafacz to the Borough, dated November 22, 1993, which was included in the Borough's pretrial memorandum and, in which, appellee Rafacz allegedly admitted his negligence in miscalculating the multiplier. Appellant filed suit against appellee on January 2, 1996.

During the subsequent course of litigation, appellee served requests for admission on appellant. The requests were not answered and, therefore, the facts contained therein were properly deemed "conclusively established." Pa.R.C.P. 4014(d); *Richard T. Byrnes v. Buss Automation*, 415 Pa.Super. 549, 609 A.2d 1360 (1992). The unanswered

---

6. Appellant was informed of the error at a meeting with Borough officials on December 9, 1993, and again via correspondence addressed to him, dated December 27, 1993 which read, in pertinent part, "[T]he reason for the underbilling was the result of an incorrect multiplier being used. The multiplier used was 40 when it should have been 80. This undercharge has been used since November of 1988."

requests for admission conclusively established, *inter alia,* that:

 D. The Defendant, William A. Heim, Jr., t/d/b/a Scarlet "D," filed a Complaint against Additional Defendant, Walter J. Rafacz t/d/b/a Technical Services Company, on January 2, 1996.

 E. In his Complaint against the Additional Defendant, Walter J. Rafacz, t/d/b/a Technical Services Company, Defendant, William A. Heim, Jr. t/d/b/a Scarlet "D," alleged that Walter J. Rafacz was negligent in that he failed to "properly determine the CT ratio of 400/5 rather than 200/5, thereby making the meter multiplier X80 rather than X40."

 F. Walter J. Rafacz, t/d/b/a Technical Services Company, has had no direct or indirect involvement with Defendant William A. Heim, Jr., t/d/b/a Scarlet "D"'s electric meter and/or current transformers, nor has Additional Defendant, Walter J. Rafacz, t/d/b/a Technical Services Company, been involved in the calculation of the meter multiplier for Defendant, William A. Heim, Jr., t/d/b/a Scarlet "D" since October 9, 1988.

 G. Defendant, William A. Heim, Jr., t/d/b/a Scarlet "D" was aware of the error in the calculation of his meter multiplier and the resulting underpayment of his electric charges to the Plaintiff, Borough of Mifflinburg since December 9, 1993.

 H. In a letter dated December 27, 1993, Plaintiff, Borough of Mifflinburg, again advised Defendant, William A. Heim, Jr., t/d/b/a Scarlet "D" that he was underbilled $29,717.20 as a result of an incorrect meter multiplier being used to calculate his electric charges since November of 1988.

In addition to providing no answers to appellee's requests for admission, appellant also admitted to them in his brief in opposition to appellee's motion for summary judgment. As a consequence to these established facts, the court granted appellee's motion for summary judgment on the ground that the

applicable two year limitations period had elapsed.[7]

Appellant raises two issues for our review:

1. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON THE GROUNDS THAT THE TWO (2) YEAR STATUTE OF LIMITATIONS HAD EXPIRED AND WHERE THE LOWER COURT FAILED TO HOLD AN EVIDENTIARY HEARING TO DETERMINE IF THE DISCOVERY RULE WOULD TOLL THE STATUTE OF LIMITATIONS.

2. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE WHEN IT DETERMINED AS A MATTER OF LAW, RATHER THAN ALLOWING THE JURY TO DETERMINE AS A MATTER OF FACT, WHETHER THE APPLICABLE STATUTE OF LIMITATIONS HAD RUN ON APPELLANT'S CLAIM AGAINST APPELLEE.

 ■ We incorporate by reference our well-settled standard of review previously stated and additionally note that "summary judgment can be properly entered in favor of a defendant where plaintiff's cause of action is barred by the statute of limitations." *A. McD. v. Rosen, M.D.,* 423 Pa.Super. 304, 307, 621 A.2d 128, 130 (1993). In the instant case, all parties agree that the applicable period of limitation is two years pursuant to 42 Pa. C.S.A. § 5524.

 ■ In general, the statutory period will begin to run when the cause of action accrues, i.e., the date on which the injury is sustained. *Pounds v. Lehman, M.D.,* 384 Pa.Super. 358, 361, 558 A.2d 872, 873 (1989). Our supreme court has held:

As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. Thus, the stat-

---

**7.** Initially, appellee's motion for summary judgment was denied without prejudice to file a motion for reconsideration because, as the court noted in its initial order denying summary judgment, "a copy of the Requests for Admission are not attached to the Motion, and are not of record in this matter." In appellee's motion for reconsideration, the unanswered requests were attached and the motion for summary judgment was subsequently granted.

ute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.

*Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) (citations omitted).

■ In the instant case, appellant alleges that the "discovery rule" worked to toll the statutory limitations period and that the court erred when it determined as a matter of law that the limitations period had expired. "The 'discovery rule' is an exception to the rule which arises from the inability of an injured person, despite the exercise of due diligence, to know of the injury or its cause." *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992). A court presented with an invocation of the discovery rule must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action. *Pocono Int'l. Raceway, supra,* 503 Pa. at 85, 468 A.2d at 471.

> The standard of reasonable diligence is an objective or external one that is the same for all individuals. We evaluate the plaintiff's conduct in terms of what he should have known at a particular time by following a course of reasonable diligence. If a party has the means of discovery within his power but neglects to use them, his claim will still be barred.

\* \* \* \* \*

> The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law.

*Ingenito v. AC & S, Inc.,* 430 Pa.Super. 129, 133–35, 633 A.2d 1172, 1174–75 (1993) (citations omitted).

■ In the instant case, the record clearly establishes that appellant knew by December 27, 1993, that his electric meter employed an incorrect multiplier. He was thus aware of his injury, i.e., that through the error of another, he was underbilled by approximately $27,000. Despite being armed with knowledge of his injury, appellant did nothing further to investigate the facts surrounding his potential claim. He did not use the discovery process to ask who installed the meter, or who miscalculated the multiplier or how the multiplier was miscalculated. Having failed to discover the easily discoverable, we must conclude that appellant is charged with knowledge of Rafacz's role in his plight. Moreover, the court did not err in determining that the statutory period had expired as a matter of law.

> Where the issue involves a factual determination regarding what is a reasonable time for plaintiff to discover his injury and its cause, the issue is usually for the jury. However, where the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury or its cause was unreasonable as a matter of law, summary judgment may be entered by the court.

*Id.* at 134, 633 A.2d at 1175 (citations omitted).

Finally, appellant admits he in fact discovered Mr. Rafacz's involvement on October 15, 1995, but offers no valid explanation as to why he did not join Mr. Rafacz as an additional defendant in the two and one half months prior to December 27, 1995, the last day of the applicable limitations period. Thus, the court did not err in entering summary judgment as a matter of law.

■ We turn finally to appellant's allegation that the court erred by failing to hold an evidentiary hearing to determine whether or not the discovery rule should have been applied. Because appellant's discussion of this issue in the argument portion of his brief is limited to one sentence and includes no supporting citations to law and because the claim has been answered above, we will not consider the merits thereof. Pa.R.A.P. 2119(a); *Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378 (1995) (the argument portion of an appellate brief must include pertinent discussion of the particular point raised along with discussion and citation of pertinent authority;

including only general statements, unsupported by citation of authority precludes review of the merits of the issue). For all the above reasons we conclude that the court's order granting summary judgment to appellee on statute of limitations grounds was proper. Order affirmed.

In conclusion, we affirm the order of summary judgment entered in favor of the Borough of Mifflinburg, appealed at 00843 Harrisburg 1996. We also affirm the order of summary judgment entered in favor of Walter Rafacz, t/d/b/a Technical Services Company, appealed at 00842 Harrisburg 1996.[8]

Orders affirmed.

---

**8.** Appellant's briefs incorrectly exchange the docket numbers listed above.